**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-03251-NYW

COURTNEY WENNERSTROM,

      Plaintiff,

v.

CITY & COUNTY OF DENVER,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

      This matter comes before the court on Defendant City and County of Denver's ("Defendant" or the "City") Motion for Summary Judgment (or "Motion"), filed October 9, 2020. [#22]. The undersigned considers the Motion pursuant to 28 U.S.C. § 636(c) and the Order of Reference for all purposes, *see* [#13], and concludes that oral argument will not materially assist in the resolution of this matter. Accordingly, upon review of the Motion and associated briefing, the applicable case law, and the record before the court, I **GRANT** the Motion for Summary Judgment.

## UNDISPUTED MATERIAL FACTS

      The court draws the following material facts from the record before the court. These material facts are undisputed for purposes of the Motion.

      1.    Plaintiff Courtney Wennerstrom ("Plaintiff" or "Ms. Wennerstrom") is a 46-year-old resident of Denver, Colorado, who was diagnosed with fibromyalgia by the Colorado

Fibromyalgia Clinic in or about December 2017, though she experienced symptoms years earlier. *See* [#22-2 at 41:7-42:23, 194:16-19;[1] #26-2 at ¶¶ 3-4, 12].

2.      According to Ms. Wennerstrom, her fibromyalgia causes daily pain, grogginess, fatigue, exhaustion, muscle tension, nausea, and anxiety.  [#22-2 at 125:1-4, 196:24-25, 198:19-25, 200:7-18, 247:17-248:9, 248:18-249:2; #26-2 at ¶¶ 16, 18, 23, 25, 26].

3.      Approximately once or twice per month, Ms. Wennerstrom experiences fibromyalgia flare ups, lasting hours, days, or months,[2] that cause excruciating pain, severe exhaustion, and make it difficult for her to function, and extreme heat (over 92 degrees) can exacerbate her symptoms.  *See* [#22-2 at 125:9-11, 196:21-197:5, 200:4-201:23, 247:17-25; #26-2 at ¶¶ 14, 18, 23-24].

4.      When experiencing a flare up, Ms. Wennerstrom has difficulty running errands, sleeping, and exercising.  *See* [#22-2 at 196:21-197:5, 200:4-201:6, 201:14-23, 247:17-249:2; #26-2 at ¶¶ 17-20, 23-24].

5.      Despite her occasional flare ups, no doctor has prescribed Ms. Wennerstrom any working restrictions; indeed, she "function[s] very well" as her fibromyalgia only occasionally (roughly two-percent of the time) interferes with her ability to work; does not severely restrict her

---

[1] When citing a transcript, the court cites the document number generated by the Electronic Court Filing system, but the page and line numbers generated by the transcript.

[2] The City argues that the court should disregard Ms. Wennerstrom's assertion that her flare ups can last months because this contradicts her prior sworn testimony that her flare ups last a couple of days.  *See* [#32 at 4].  Ms. Wennerstrom did testify at her deposition that her flare ups can last "a couple of days," [#22-2 at 197:1-5], but the court cannot disregard the Declaration simply because it is not identical to Ms. Wennerstrom's prior sworn testimony.  *See Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1218 n.3 (10th Cir. 2014).  Rather, her Declaration appears to provide additional, rather than contradictory, context regarding her flare ups, and thus the court finds no basis for disregarding these assertions.  *See Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 956 n.3 (explaining that an affidavit was not a sham where it provided more examples of the racial hostility the plaintiff experienced but which she did not fully testify to in her deposition).

from performing any activity or even restrict her from performing any activity on a regular basis; and does not cause her to miss work.  *See* [#22-2 at 124:12-125:4, 200:2-6, 201:7-13, 202:16-22, 243:5-7].[3]

6.    To manage her fibromyalgia, Ms. Wennerstrom avoids activities that may aggravate her symptoms, including avoiding extreme heat; and takes medication; diets; exercises; gets massages; performs yoga; and meditates.  *See* [#22-2 at 197:11-24; #26-2 at ¶ 14].

7.    On March 1, 2018, the City offered Ms. Wennerstrom "the probationary, limited term position of Operations Assistant in the Department of Public Health and Environment, Denver Animal Protection Division ('DAP')"; her working title was "Community Organizer" for the City's Pets for Life program ("PFL").  *See* [#22-1; #22-2 at 55:18-25; #22-3; #22-7; #26-6].

8.    Ms. Wennerstrom reported directly to Community Outreach Coordinator Julian Wolff ("Mr. Wolff"), who reported to Community Partnerships Manager Jill Brown ("Ms. Brown"), and Ms. Brown reported to Director Alice Nightengale ("Ms. Nightengale").  *See* [#22-2 at 76:4-11; #22-4 at 7:7-16, 22:25-23:3; #22-5 at 8:7-10, 13:19-25; #26-2 at ¶¶ 36-37, ].

9.    As Community Organizer, DAP assigned Ms. Wennerstrom to the Montbello neighborhood, a new area within PFL, and tasked Ms. Wennerstrom with establishing a presence in the Montbello neighborhood by going door-to-door to help underserved residents care for their

---

[3] Ms. Wennerstrom purports to include additional limitations on her functionality in her Declaration, attesting that even when her fibromyalgia symptoms are minor, she has difficulty sitting or standing for prolonged periods, concentrating, and performing daily errands and chores. *See* [#26-2 at ¶¶ 18-20, 22].  The court agrees with the City that these attestations do contradict Ms. Wennerstrom's prior sworn testimony.  *Compare* [*id.*] *with* [#22-2 at 124:12-125:4, 201:7-13, 243:5-7 & Undisputed Material Facts ¶ 5].  Ultimately, Ms. Wennerstrom's assertions have no impact on the court's analysis.  *See Law Co., Inc. v. Mohawk Constr. & Supply Co., Inc.*, 577 F.3d 1164, 1169 (10th Cir. 2009) (explaining that the district does not abuse its discretion in excluding contradictory testimony when the court identifies the conflicting testimony and determines it attempts to create a shame dispute of fact).

pets. *See* [#22-2 at 59:6-8, 90:4-19, 91:2-14, 100:11-15; #22-3; #22-4 at 11:10-22, 13:4-13, 33:22-34:23, 43:15-24, 70:3-7, 73:7-24, 87:2-8; #22-6 at 18:6-15, 70:1-6; #22-16 #26-2 at ¶ 56].

10.     To better achieve PFL's outreach mission, Mr. Wolff and Ms. Brown established a set number of proactive outreach hours, 16.5, that Ms. Wennerstrom needed to achieve each week based on recommendations from the Humane Society of the United States. *See* [#22-4 at 32:5-11, 70:15-71:2, 74:16-75:14; #22-5 at 110:7-112:17; #22-17; #22-18; #26-2 at ¶¶ 101, 103].

11.     Ms. Wennerstrom struggled to meet her weekly 16.5 hours of proactive outreach and attributed her shortcoming to too many "one-off tasks," such as transporting animals to surgeries, and extreme heat—though DAP encouraged Ms. Wennerstrom to plan her outreach around the hottest hours of the day. *See* [#22-2 at 115:4-9, 202:16-203:20, 204:14-25, 221:4-17; #22-6 at 60:24-61:16; #22-21; #22-25; #26-2 at ¶¶ 105-07, 110].

12.     Ms. Wennerstrom also had issues with tardiness, data entry, adhering to DAP's dress code, scheduling client appointments, coordinating the training of an intern, and attending mandatory trainings—the first due to a fibromyalgia flare up, though she reported to work on time, and the second due to an ill dog, though she again reported to work on time. *See* [#22-2 at 124:1-22, 127:23-128:2, 131:10-20, 134:8-23, 139:20-140:10, 142:1-143:20, 145:15-23; #22-4 at 46:6-21, 47:2-7, 48:14-51:4, 50:11-21; #22-5 at 38:15-18, 40:20-23, 70:10-19, 72:22-73:2, 75:16-76:9; #22-6 at 86:13-87:2, 89:10-22, 93:8-94:3; #22-8; #22-12; #22-13 at 11:10-15; #26-9].[4]

13.     In addition, both Ms. Brown and Mr. Wolff perceived issues with Ms. Wennerstrom's trustworthiness and honesty, given her failure to take accountability for her mistakes and shortcomings and her representations on both her resume and job application that she

---

[4] Though Ms. Wennerstrom attempts to recharacterize or justify her actions, she does not dispute that she was late to appointments, made errors when performing data entry, failed to adhere to DAP's dress code, and missed two required trainings.

held a Ph.D. in English when in fact she had not completed her dissertation.[5] *See* [#22-4 at 44:17-47:18, 48:3-49:8, 50:9-21, 51:23-52:19, 90:16-25; #22-5 at 73:17-74:4, 75:16-76:23, 122:8-19; #22-14 at 2; #22-15 at 1, 7].

14.     Mss. Brown and Nightengale and Mr. Brown, as well as a Human Resources representative, engaged in several conversations regarding Ms. Wennerstrom's perceived performance issues.  [#22-4 at 44:17-47:18; #22-5 at 70:10-19, 70:25-71:10, 71:20-72:10, 72:16-21, 73:17-74:4, 122:10-123:3; #22-13 at 5:23-6:25, 12:24-13:16; #26-2 at ¶ 40].

15.     Ms. Nightengale, relying on the recommendation of Ms. Brown and Mr. Wolff, terminated Ms. Wennerstrom for "significant performance issues," including tardiness, a dress code violation, lack of accountability, perceived dishonesty and untrustworthiness, and repeated mistakes, on or about July 21 or 23, 2018.  *See* [#22-4 at 44:17-47:18; #22-5 at 70:10-19, 70:25-71:10, 71:20-72:10, 72:16-21, 73:17-74:4, 122:10-123:3; #22-13 at 5:23-6:25, 12:24-13:16; #26-2 at ¶ 40].

16.     On or about October 11, 2018, Ms. Wennerstrom submitted a charge of discrimination with the Colorado Civil Rights Division and the Equal Employment Opportunity Commission ("EEOC"), alleging that the City subjected Ms. Wennerstrom to discriminatory working conditions by requiring her to complete proactive outreach hours in extreme heat, which aggravated her fibromyalgia, and then terminated Ms. Wennerstrom because of her fibromyalgia. [#22-31].

17.     On November 18, 2019, Ms. Wennerstrom initiated this civil action.  *See* [#1].

---

[5] Ms. Wennerstrom attests that she informed DAP of the error on her resume regarding her Ph.D. status prior to her hire.  *See* [#22-2 at 54:2-18; #26-2 at ¶¶ 41-50].

## LEGAL STANDARD

Pursuant to Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation marks omitted).  It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial.  *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).  And this is so when, as here, a defendant moves for summary judgment to test an affirmative defense—the defendant must demonstrate the absence of any disputed fact as to the affirmative defense asserted.  *See Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011).  At all times, the court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."  *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016).

To satisfy its burden at summary judgment the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient.  *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998) (explaining that the nonmovant cannot rely on "mere reargument of his case or a denial of an opponent's allegation" to defeat summary judgment).  In considering the nonmovant's evidence, the court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165

(10th Cir. 2008).  Further, the court may consider only admissible evidence, *see Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995), though the evidence need not be in a form that is admissible at trial, only the substance must be admissible at trial, *see Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016).  Indeed, "[t]o determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury."  *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

## ANALYSIS

Pursuant to her operative Amended Complaint, Ms. Wennerstrom asserted four claims against the City under the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, including: (1) discrimination based on an actual disability as defined by 42 U.S.C. § 12102(1)(A) ("Claim 1"); (2) discrimination based on a failure to accommodate ("Claim 2"); (3) discrimination based on a regarded disability as defined by 42 U.S.C. § 12102(1)(C) ("Claim 3"); and (4) discrimination based on a recorded disability as defined by 42 U.S.C. § 12102(1)(B) ("Claim 4"). *See generally* [#5].

The City filed the instant Motion for Summary Judgment on October 9, 2020.  [#22].  In her Corrected/Amended Response to Defendant's Motion for Summary Judgment, Ms. Wennerstrom has dismissed her reasonable accommodation claim, [#29 at 1 n.1], and thus the court will not address Claim 2 in this Memorandum Opinion and Order.  The court now turns to the remaining claims.

## I.      The ADA, 42 U.S.C. §§ 12101 *et seq.*

By enacting the ADA, Congress sought to ensure disabled individuals received full and equal opportunities to participate in society by prohibiting discrimination based on an individual's

disability.  *See* 42 U.S.C. §§ 12101(a)-(b).  The ADA prohibits discrimination in three realms of public life: employment (Title I); public services, programs, or activities (Title II); and places of public accommodation (Title III).  *See Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004).  Because Ms. Wennerstrom sues her former employer, her claims arise under Title I of the ADA, which prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112.  To remedy alleged discrimination, the ADA allows private citizens to sue for damages for alleged statutory violations.  *See Guttman v. Khalsa*, 669 F.3d 1101, 1109 (10th Cir. 2012) (citing 42 U.S.C. § 12133).

As mentioned, Ms. Wennerstrom asserts three disability discrimination claims, asserting the City terminated her because of:

- an actual disability (Claim 1);

- a "regarded as" disability (Claim 3); and

- a record of disability (Claim 4).

*See generally* [#5].  The City moves for summary judgment on all three claims for several reasons. First, it argues that Ms. Wennerstrom fails to demonstrate that she is disabled, is regarded as disabled, or has a record of disability as alleged in Claims 1, 3, and 4, respectively.  Second, it argues that Ms. Wennerstrom cannot demonstrate a genuine dispute of material fact that the City's legitimate, non-discriminatory reasons for Ms. Wennerstrom's termination were pretextual. Lastly, it contends Ms. Wennerstrom failed to exhaust her administrative remedies as to Claims 3 and 4.

Because exhaustion may bar Ms. Wennerstrom from pursuing Claims 3 and 4, I begin with considering the City's arguments that Ms. Wennerstrom failed to exhausted her administrative remedies before considering whether Ms. Wennerstrom demonstrates a genuine issue of material fact as to her disability discrimination claims.

## II.    Exhaustion of Administrative Remedies

"Title I of the ADA requires a plaintiff to exhaust her administrative remedies before filing suit." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007).  For purposes of exhausting administrative remedies, Title I utilizes the procedures provided by Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-5.  *See* 42 U.S.C. § 12117(a).  "Title 42 U.S.C. § 2000e-5(e)(1) is a charge filing provision that 'specifies with precision' the prerequisites that a plaintiff must satisfy before filing suit." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)).  Section 2000e-5(e)(1) sets forth the parameters for filing a charge related to an unlawful employment practice:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ... except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice ... such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred.

42 U.S.C. § 2000e-5(e)(1).  "[E]ach discrete incident of [discriminatory or retaliatory] treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted," which requires the plaintiff to file "an additional or amended charge with the EEOC to satisfy the exhaustion requirement as to discrete incidents occurring after the initial charge." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018).  "This regulatory exhaustion requirement is not a jurisdictional prerequisite for suit but is a claims-processing rule that the

employer may raise as an affirmative defense." *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020) (citing *Lincoln*, 900 F.3d at 1185).[6]

The City contends that Ms. Wennerstrom's charge of discrimination does not reference, or assert facts supporting, claims for "regarded as" and "record of" disability. [#22 at 23-24; #32 at 10]. Indeed, the City contends, Ms. Wennerstrom disavowed any "regarded as" claim before the EEOC. *See* [#22 at 23-24; #32 at 10]. I respectfully agree with the City that Claims 3 and 4 are barred by Ms. Wennerstrom's failure to administratively exhaust them.

At the outset, the court notes that the City did not assert failure to exhaust administrative remedies as an affirmative defense in its Answer to the Amended Complaint [#5] or the Scheduling Order [#17], and appears to raise it for the first time in its Motion for Summary Judgment. Nevertheless, the court may consider an affirmative defense raised for the first time in the context of a motion for summary judgment if the plaintiff will not suffer prejudice. *See Ahmad v. Furlong*, 435 F.3d 1196, 1201-02 (10th Cir. 2006) (concluding that a defendant may raise an affirmative defense for the first time in a motion for summary judgment, thereby constructively amending its answer, when the plaintiff will suffer no prejudice). In addition to raising the affirmative defense in its Motion for Summary Judgment, the City asserts this affirmative defense in the Final Pretrial

---

[6] The City argues that the court lacks subject matter jurisdiction over Claims 3 and 4 because Ms. Wennerstrom failed to exhaust her administrative remedies. [#22 at 10; #32 at 10]. While the United States Court of Appeals for the Tenth Circuit initially held that exhaustion was a jurisdictional prerequisite to suit under the ADA, *see, e.g.*, *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005) ("In the Tenth Circuit, a plaintiff must exhaust her claims before the EEOC as a prerequisite to federal court jurisdiction over her ADA claims."), it has since overruled that precedent and held that a "plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018) (considering whether exhaustion of administrative remedies for purposes of an ADA claim is jurisdictional or an affirmative defense).

Order [#35], thereby providing additional notice to Ms. Wennerstrom that it may assert such a defense at trial. *See Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1076 (10th Cir. 2009) (explaining that a plaintiff does not suffer prejudice when she has notice the defendant will raise an affirmative defense at trial, and thus the defendant's failure to comply with Rule 8(c) is not fatal).  Moreover, Ms. Wennerstrom has raised no challenge to the City's late assertion of this affirmative defense; indeed, she does not respond to the issue in her Amended Response to the Motion for Summary Judgment.  Thus, I find no prejudice to Ms. Wennerstrom in considering the City's failure to exhaust administrative remedies affirmative defense presently.

Ms. Wennerstrom's charge of discrimination states:

- she performed her work as a Community Organizer satisfactorily;

- the City required her to perform proactive work each week during the summer;

- her fibromyalgia made it difficult to work in hot weather;

- she requested an accommodation from the City; and

- the City refused the accommodation and terminated her because of her disability.[7]

[#22-31 at 8].  Ms. Wennerstrom's letter accompanying the charge of discrimination similarly focuses on the City's alleged failure to accommodate Ms. Wennerstrom's fibromyalgia and its eventual termination of Ms. Wennerstrom.  *See* [*id.* at 5].

Although the court liberally construes "the plaintiff's allegations in the EEOC charge, the charge must contain facts concerning the discriminatory . . . actions underlying each claim[,]" such that the conduct complained of "would fall within the scope of an EEOC investigation" stemming from the charge itself. *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018)

---

[7] Ms. Wennerstrom's charge of discrimination also suggests the City terminated her employment given her "association with a member of a protected class," [#22-31 at 8], but this allegations bears no relevance to Ms. Wennerstrom's ADA claims.

(emphasis in original) (internal quotations omitted).  Moreover, a plaintiff must exhaust each discrete act of alleged discrimination.  *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003).  And a plaintiff may no longer piggyback unexhausted claims to exhausted claims, even if the unexhausted claims are related to the exhausted claims.  *Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1226-27 (10th Cir. 2014).

Absent from Ms. Wennerstrom's charge of discrimination or accompanying letter is any suggestion the City regarded Ms. Wennerstrom as disabled.  *See generally* [#22-31].  To establish that the City regarded Ms. Wennerstrom as disabled, she must have alleged that the City was aware of the impairment and therefore perceived the impairment at the time of her termination.  *Adair v. City of Muskogee*, 823 F.3d 1297, 1306 (10th Cir. 2016).  Rather, Ms. Wennerstrom alleges only that she is a qualified individual with a disability and the City terminated her because of her disability.  *E.g.*, [#22-31 at 4, 5, 8]; *Manna v. Phillips 66 Co.*, 820 F. App'x 695, 704 (10th Cir. 2020) (a "regarded as" claim requires that the employer perceived the plaintiff as having an impairment at the time of the termination and terminated the plaintiff because of that perceived impairment).  Indeed, in her Rebuttal to the City's Position Statement before the Colorado Civil Rights Division, Ms. Wennerstrom rejected the City's suggestion that Ms. Wennerstrom was "regarded as" disabled and argued Ms. Wennerstrom "meets the definition of the ADA as someone with a disability."  [#22-32 at 3].

In addition, a "regarded as" claim exists only if the perceived impairment is <u>not</u> transitory or minor.  *Adair*, 823 F.3d at 1306.  "A transitory impairment is an impairment with an actual or expected duration of 6 months or less."  42 U.S.C. § 12102(3)(B).  Ms. Wennerstrom's charge of discrimination and accompanying letter, however, attribute her impairment to the "[e]xtreme heat in Denver during July 2018," which exacerbated her fibromyalgia, and Ms. Wennerstrom alleged

she could "<u>easily</u> perform" the proactive work when "it was not so hot." [#22-31 at 3, 8 (emphasis

added)]. And there is no other suggestion in the charge of discrimination that Ms. Wennerstrom's

fibromyalgia, even if known to the City, otherwise caused non-transitory impairments that form

the basis of her discrimination claim. Thus, the court is not convinced that Ms. Wennerstrom's

charge of discrimination could be liberally construed to include her "regarded as" disability claim.

*See Kear v. Bd. of Cty Comm'rs of Sedgwick Cty., Kan.*, 491 F. Supp. 2d 1052, 1055-56 (D. Kan.

2007) (concluding the plaintiff did not exhaust her "regarded as" claim where her charge of

discrimination alleged only that the plaintiff was disabled); *cf. Turner v. Phillips 66 Co.*, No. 18-

CV-00198-GKF-FHM, 2019 WL 1434659, at *14 (N.D. Okla. March 29, 2019) (concluding the

plaintiff exhausted his traditional discrimination and "regarded as" discrimination claims where

the charge of discrimination alleged the employer "considered [the plaintiff] disabled/unable to do

[his] job" because of the employer's belief the plaintiff's allergy medication interfered with the

plaintiff's ability to perform the essential functions of his job).

      The same is true of Ms. Wennerstrom's "record of" disability claim. "To have a record of

such an impairment, a plaintiff must have a history of, or been misclassified as having, an

impairment that substantially limited a major life activity." *Sorensen v. Univ. of Utah Hosp.*, 194

F.3d 1084, 1087 (10th Cir. 1999). But neither the charge of discrimination nor accompanying

letter indicate any record of Ms. Wennerstrom's fibromyalgia substantially limiting a major life

activity, aside from Ms. Wennerstrom's own assertions regarding her ability to perform proactive

work in the extreme heat. *Cf. Sink v. Wal-Mart Stores, Inc.*, 147 F. Supp. 2d 1085, 1092-94 (D.

Kan. 2001) (finding the plaintiff exhausted his "record of" disability claim where his charge of

discrimination alleged he retired from his previous employment with permanent disability and his

current employer refused to accept a doctor's note clearing the plaintiff to return to work). Indeed,

the record contains no documentary medical evidence of Ms. Wennerstrom's fibromyalgia and its purported effects on a major life activity.  Thus, the court concludes that Ms. Wennerstrom's charge of discrimination cannot be liberally construed to include a "record of" disability claim.

In sum, the court agrees with the City that Ms. Wennerstrom failed to exhaust her administrative remedies as to her "regarded as" (Claim 3) and "record of" (Claim 4) claims.  Again, Ms. Wennerstrom was required to exhaust her administrative remedies as to each discrete act of alleged discrimination, *Smith*, 904 F.3d at 1164, and it is not enough that her "regarded as" and "record of" claims are related to her discrimination claim, *Eisenhour*, 744 F.3d at 1226-27. Accordingly, the court **GRANTS** the City's Motion for Summary Judgment in this regard.[8]

### III.    Disability Discrimination

To prove discrimination, a plaintiff may rely on either direct evidence of discrimination or indirect evidence of discrimination.  *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017).  Direct evidence is that which "on its face," without inference or presumption, establishes that discriminatory animus was the employer's reason for the employment decision. *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 883 (10th Cir. 2018).  In the absence of direct evidence, like here, a plaintiff may rely on indirect evidence using the *McDonnell Douglas* burden-shifting framework.  *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 995 (10th Cir. 2019).  This requires the plaintiff to first establish a prima facie case of discrimination; the burden then shifts to the employer to establish a legitimate, non-discriminatory reason for its conduct, with the burden returning to the plaintiff to demonstrate that this reason is false.  *Riser v. QEP Energy*, 776 F.3d 1191, 1200 (10th Cir. 2015).

---

[8] For this reason, the court does not consider the City's remaining arguments challenging the merits of Claims 3 and 4 but notes that these claims would also fail for the reasons below.

### A.   Prima Facie Case

Ms. Wennerstrom must first establish a prima facie claim of disability discrimination, which requires her to prove:

1.   she is disabled;

2.   she is qualified to perform her essential job functions with or without accommodation; and

3.   she was terminated because of her disability—actual, regarded, or recorded.

*Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 544 (10th Cir. 2014).  Generally, establishing a prima facie case of discrimination is not onerous.  *Aubrey v. Koppes*, 975 F.3d 995, 1014 (10th Cir. 2020).

The City contends that Ms. Wennerstrom cannot establish a prima facie case of disability discrimination.  For purposes of the instant Motion, the court will assume without deciding Ms. Wennerstrom has satisfied her initial burden, though this is far from clear based on the record before the court.  *See Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005) (explaining that the plaintiff's burden at this initial stage is not onerous).  Thus, the court now considers the City's legitimate, non-discriminatory reason for terminating Ms. Wennerstrom.

### B.   Legitimate, Non-Discriminatory Reason

The burden now shifts to the City to proffer admissible evidence that discriminatory animus did not motivate their termination of Ms. Wennerstrom. *See Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1279 (10th Cir. 1999) (noting that the defendant's burden of production does not involve a credibility assessment) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981)).  "The defendant's burden is exceedingly light ..., as [its] stated reasons need only be

legitimate and non-discriminatory on their face[.]"  *DePaula*, 859 F.3d at 970 (internal citations and quotations omitted).

The Undisputed Material Facts reveal that the City, through Mss. Nightengale and Brown and Mr. Wolff, terminated Ms. Wennerstrom because of "significant performance issues," such as tardiness, a dress code violation, lack of accountability, perceived dishonesty and untrustworthiness, and repeated mistakes.  *See* Undisputed Material Facts *supra* ¶ 15.  These reasons are non-discriminatory on their face.  Thus, the City satisfies its burden.

### C.      Pretext

The burden now shifts back to Ms. Wennerstrom to show the City's justification was pretextual.  *See E.E.O.C. v. Picture People, Inc.*, 684 F.3d 981, 989 (10th Cir. 2012); *see also Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007) (explaining the plaintiff now has the full burden of persuasion that her employer terminated her for discriminatory reasons).  "A plaintiff can establish pretext by showing the defendant's proffered non-discriminatory explanations for its actions are so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude they are unworthy of belief."  *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 900 (10th Cir. 2017).  Or, Ms. Wennerstrom may establish pretext by providing evidence the City treated Ms. Wennerstrom differently than non-disabled employees who violated rules of comparable seriousness.  *See DeWitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017) (quoting *Kendrick*, 220 F.3d at 1230).  But mere conjecture or speculation is not enough.  *See Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1200 (10th Cir. 2015).  Rather, the court must examine the facts as they appeared to the person who decided to terminate the plaintiff, and the court will not second-guess the propriety of that decision if the

employer believed its legitimate, non-discriminatory reasons and acted in good faith on those reasons.  *See Hiatt v. Colorado Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017).

Ms. Wennerstrom contends the City's legitimate, non-discriminatory reasons for terminating Plaintiff are unworthy of belief, contradictory, and subjective.  *See* [#29 at 22].  She also intimates that the City treated Ms. Wennerstrom differently than a similarly situated employee.  *See* [*id.* at 22-23].  For the following reasons, I conclude Ms. Wennerstrom fails to create a genuine dispute of material fact regarding the City's reasons for terminating her.

*First*, Ms. Wennerstrom argues that her position did not require a Ph.D. and she informed Ms. Brown and Mr. Wolf in her interview that she had completed all requisites to obtaining her doctorate except for defending her dissertation.  *See* [#29 at 22].  While this may be so, it does not create a genuine dispute of material fact as to Ms. Brown's and Mr. Wolff's concerns regarding Ms. Wennerstrom's honesty and trustworthiness.  Indeed, Ms. Brown and Mr. Wolff identified other instances of perceived dishonesty and untrustworthiness concerning Ms. Wennerstrom's tardiness, mistakes, and missed trainings.  *See, e.g.*, [#22-4 at 45:6-47:18, 50:11-21, 52:2-19, 90:16-25; #22-5 at 75:16-76:23; #26-9 at 1 (detailing Ms. Wennerstrom's issues with data entry and tardiness)].  Nor does Ms. Wennerstrom refute the fact that she affirmatively (mis)represented in her job application that she "ha[s] a PhD [sic] in English from Indiana University[.]"  [#22-15 at 7].  Thus, there is no indication that Ms. Brown and Mr. Wolff did not believe their legitimate, non-discriminatory reasons for terminating Plaintiff or did not act in good faith on those reasons.  *See Hiatt*, 858 F.3d at 1316.

*Second*, Ms. Wennerstrom suggests that the court should infer pretext because Ms. Brown and Mr. Wolff "did not provide credence to the reasons [Ms. Wennerstrom] offered . . . for being late or confirm her reasons," and Mr. Wolff remembers only two instances of tardiness.  [#29 at

22, 23]. Nor could Ms. Brown confirm whether Mr. Wolff provided clear direction to Ms. Wennerstrom. [*Id.*]. But Ms. Wennerstrom does not dispute that she had issues with tardiness and other performance-related issues, and the court is not convinced that Mr. Wolff's ability to recall only two instances of tardiness renders these reasons false. *See* Undisputed Material Facts *supra* ¶¶ 11-13. Moreover, both Ms. Brown and Mr. Wolff testified as to why they did not fully credit Ms. Wennerstrom's reasons for her tardiness and other performance-related issues. *See, e.g.*, [#22-4 at 45:22-46:17, 46:18-47:18, 48:3-52:19; #22-5 at 75:16-76:15]. And Ms. Wennerstrom's denials of wrongdoing or subjective beliefs regarding her performance are insufficient to create a genuine dispute of material fact as to pretext. *See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1179 (10th Cir. 2006) ("Even assuming Metzler subjectively believed she did not have a poor attitude or that her knowledge and performance were up to par, it is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of her own relative performance." (brackets and internal quotation marks omitted)). Thus, Ms. Wennerstrom fails to offer "evidence that [Ms. Brown and Mr. Wolff] didn't really believe [their] proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda." *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010) (explaining that a plaintiff cannot show pretext even if the employment decision was a bad one).

**Third**, Ms. Wennerstrom argues that the City's justification of performance issues is false because Mr. Wolff praised Ms. Wennerstrom's performance not long before deciding to terminate her. Further, another community organizer believed Ms. Wennerstrom performed her job well, but Mr. Wolff did not accurately relay this information to Ms. Brown. *See* [#29 at 23]. To be sure, a plaintiff may establish pretext by highlighting the inconsistencies between her praiseworthy performance evaluations and the contradictory termination decision due to performance issues.

*See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1219 (10th Cir. 2002); *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 564 (10th Cir. 1996). But Ms. Wennerstrom fails to adduce any evidence corroborating her assertions. Rather, in an email dated June 9, 2018, Mr. Wolff indicates to Ms. Brown that Ms. Wennerstrom's "progress with training" contains both "good and some bad," with the bad including data entry errors and "mistakes" at certain clinics. *See* [#26-9 at 1]. While Mr. Wolff highlights Ms. Wennerstrom's proficiencies in some areas, the problem areas identified are consistent with the reasons provided for Ms. Wennerstrom's termination—reasons well documented in the record. Ms. Wennerstrom provides no other evidence corroborating her assertions that she received praise for her work, and the deposition testimony she alludes to is not before the court on the instant Motion. *See* [#29 at 23, ¶¶ m-n]. Thus, Ms. Wennerstrom fails to demonstrate a genuine issue of material fact as to pretext in this regard.[9] *Cf. Platero v. Baumer*, 98 F. App'x 819, 821-22 (10th Cir. 2004) (finding a genuine dispute of material fact regarding pretext given the stark inconsistencies between the plaintiff's strong performance evaluations and the termination justification of poor performance).

   **Fourth**, and finally, Ms. Wennerstrom suggests the City treated Ms. Wennerstrom differently than another Community Organizer, Emily Caldwell ("Ms. Caldwell"), who also had issues with tardiness, honesty, and adhering to the dress code but was not terminated. [#29 at 23]. "To show disparate treatment, [Ms. Wennerstrom] must establish she was similarly situated to [other employees] in all relevant respects." *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th

---

[9] The same is true to the extent Ms. Wennerstrom suggests the court can infer pretext from the temporal proximity between Mr. Wolff's purported praise and Ms. Wennerstrom's termination. This is because Plaintiff's termination occurred over a one-and-a-half months after Mr. Wolff's June 8, 2019 email. Under such circumstances, the court is not convinced this temporal period gives raise to an inference of discrimination. *See Hennagir v. Utah Dep't of Corrs.*, 587 F.3d 1255, 1267 (10th Cir. 2009) (stating that temporal proximity alone is usually insufficient to infer discrimination, especially when separated by months rather than days).

Cir. 2006).  That is, those similarly situated employees dealt with the same supervisor and were subject "to the same standards governing performance evaluation and discipline."  *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007) (brackets and internal quotations omitted).  Further, Ms. Wennerstrom must demonstrate that the similarly situated employees violated rules of a comparable seriousness.  *Elmore v. Capstan, Inc.*, 58 F.3d 525, 530 (10th Cir. 1995) (internal quotation marks omitted).

To start, I conclude that Ms. Caldwell is not a sufficient comparator for purposes of the instant Motion.  Most notably, "to raise the specter of discrimination through disparate treatment a plaintiff must allege facts suggesting <u>non-disabled</u>—but otherwise similarly situated— employees receive more favorable treatment."  *Hwang v. Kansas State Univ.*, 753 F.3d 1159, 1164 (10th Cir. 2014) (emphasis added).   But Ms. Wennerstrom fails to demonstrate that Ms. Caldwell is a similarly situated, non-disabled employee.  Rather, the evidence before the court indicates that Ms. Caldwell is within the same protected class under the ADA due to Ms. Caldwell's attention deficit hyperactivity disorder.  *See, e.g.*, [#22-6 at 21:21-25, 58:4-5, 79:24, 80:18, 113:14-24; #22-26; #22-28; #22-29].  And "[a]n employer's similar or favorable treatment of protected employees does not support an inference of discriminatory animus."  *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1406 n.4 (10th Cir. 1997); *accord Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 703 (7th Cir. 2012) (concluding that disparate treatment among employees within the same protected class cannot give rise to an inference of discrimination).

Further, different "treatment between two employees by the same supervisor does not automatically give rise to a [discrimination] claim."  *Timmerman v. United States Bank, N.A.*, 483 F.3d 1106, 1120 (10th Cir. 2007).  Despite Ms. Wennerstrom's contentions that Ms. Caldwell had issues with honesty and adhering to the City's dress code, she offers no evidence to support such

contentions as she cites to deposition testimony not before the court on the instant Motion.  Nor does Ms. Wennerstrom offer any evidence suggesting that Ms. Caldwell's issues with tardiness were comparable to Ms. Wennerstrom's issues or had similar effects on Ms. Caldwell's ability to perform the Community Organizer position.  *See E.E.O.C. v. PVNF, LLC*, 487 F.3d 790, 801 (10th Cir. 2007) (finding the plaintiff was not similarly situated to a male employee because "[a]lthough there was evidence that Mr. Ennis was often late to work, there is no evidence that his tardiness prevented him or others from completing their duties.").  At most, Ms. Wennerstrom identifies a disparity in treatment between herself and Ms. Caldwell, but this alone is insufficient to demonstrate pretext.  *See Bekkem v. Wilkie*, 915 F.3d 1258, 1270 (10th Cir. 2019) (holding that the plaintiff's assertion that her employer paid her less than male employees, without more, was "insufficient to show that the [defendant's] proffered explanation for her lower pay was unworthy of belief.").

In sum, Ms. Wennerstrom fails to create a genuine dispute of material fact that the City's reasons for terminating Plaintiff were mere pretext.  For this reason, summary judgment in favor of the City is appropriate, and thus I **GRANT** the Motion for Summary Judgment in this regard.[10]

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)     The City's Motion for Summary Judgment [#22] is **GRANTED**;

(2)     Summary judgment shall enter in favor of the City and against Ms. Wennerstrom as to Claims 1, 3, and 4, and Claims 1, 3, and 4 and Ms. Wennerstrom's Amended Complaint [#5] are **DISMISSED with prejudice**;

---

[10] This conclusion equally applies to Claims 3 and 4 to the extent Ms. Wennerstrom did exhaust her administrative remedies as to those claims.

(3)     Plaintiff's failure to accommodate claim (Claim 2) is **DISMISSED with prejudice** pursuant to Plaintiff's representation in her Corrected/Amended Response [#29 at 1 n.1];

(4)     Final Judgment shall enter in **FAVOR** of the City and **AGAINST** Ms. Wennerstrom, with the City entitled to its costs under Rule 54(d) of the Federal Rules of Civil Procedure;

(5)     All remaining deadlines, including the Trial Preparation Conference and jury trial, are **VACATED**; and

(6)     This matter shall terminate accordingly.

DATED: April 9, 2021

BY THE COURT:

Nina Y. Wang
United States Magistrate Judge